**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | |
|---|---|
| IN RE:<br><br>**Hurie Lee Franklin, Jr.,**<br><br>*aka* **Hurie L. Franklin, Jr.,**<br><br>       Debtor. | **CHAPTER 13**<br>**CASE NO.: 23-11003-SDB** |
| – – – – – – – – – – – – – – – – – – – – | – – – – – – – – – – – – – – – – – – |
| **SELENE FINANCE LP,**<br>       Movant,<br>v.<br><br>**Hurie Lee Franklin, Jr.,**<br><br>       Debtor.<br><br>**Huon Le,**<br><br>        Trustee,<br><br>                        Respondents. | CONTESTED MATTER |

## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW, SELENE FINANCE LP, (hereinafter referred to as "Movant"), by and through its undersigned counsel, moves for relief from the automatic stay and alleges as follows:

1.

The Court has jurisdiction over this matter pursuant to 11 U.S.C. § 362, FRBP 4001(a), and the various other applicable provisions of the United States Bankruptcy Code, Federal Rules of Bankruptcy Procedure, and the laws of the United States of America.

2.

Hurie Lee Franklin, Jr., (hereinafter referred to as "Debtor(s)"), filed a petition for relief under Chapter 13 of the Bankruptcy Code on 12/19/2023.

3.

Movant is the holder or servicer of a loan secured by certain real property in which the Debtor has an interest. Movant holds a security interest in the Debtor's real property now or formerly known as **1405 Spann Road, Wadley, GA 30477** (hereinafter referred to as "Property") by virtue of a Security Deed dated November 8, 2007. Said Security Deed secures a Note in the original principal amount of $74,657.00. The promissory note has been duly endorsed.

4.

The terms and conditions of the Note and Mortgage were later amended pursuant to the Loan Modification Agreement ("Agreement") made May 12, 2020. Said Agreement created a new principal balance of $63,843.95. A true and accurate copy of the Agreement is attached hereto.

5.

Movant alleges that the Debtor is in default to Movant under the terms of the loan documents, having failed to make certain post-petition mortgage payments that have come due. As of September 5, 2024, the post-petition arrearage owed to Movant is $1,423.04 and consists of three (3) monthly mortgage payments at $486.06 less a suspense balance of $35.14. An additional payment will come due on October 1, 2024 and on the first day of each month thereafter until the loan is paid in full.

6.

The unpaid principal balance owed to Movant is approximately $61,846.46. The

Property was recently valued at $36,963.00 by the Jefferson County Tax Commissioner.

7.

Movant's security interest in the Property is not adequately protected due to the Debtor's failure to maintain the mortgage payments.

8.

Movant has incurred attorney's fees and costs as a result of filing this motion. These fees and costs are recoverable pursuant to the loan documents, and Movant seeks leave to recover these fees and costs under the remedies available therein.

9.

Pursuant to 11 U.S.C. § 362, Movant alleges that sufficient cause, including lack of adequate protection, exists for the automatic stay to be terminated.

WHEREFORE, Movant respectfully prays to the Court as follows:

(a) That the automatic stay under 11 U.S.C. § 362 be modified to allow Movant to pursue state remedies to protect its security interest in the Property, including, but not limited to, advertising to effectuate a foreclosure sale and gaining possession of the Property; to contact the Debtor via telephone or written correspondence to discuss potential loan workout or loss mitigation opportunities; and to perform property preservation as appropriate;

(b) That Movant's attorney's fees and costs incurred in filing and prosecuting this Motion be recoverable as pursuant to the loan documents and remedies available therein;

(c) That the fourteen (14) day stay of Bankruptcy Rule 4001(a)(3) be

waived;

(d) That Movant be permitted to offer and provide Debtor(s) with

information regarding a potential forbearance agreement, loan

modification, refinance agreement, or other loan workout/loss

mitigation agreement, and to enter into such an agreement with

Debtor(s).

(e) That in the event of an Order granting relief from the automatic stay

and said Order also instructing the Chapter 13 Trustee to cease

disbursements on Movant's Proof of Claim, Fed. R. Bank. P.

3002.1 shall no longer apply as to Movant, as said Rule only

applies in Chapter 13 cases in which claims secured by a principal

residence are provided for under Section 1322(b)(5) of the Code in

the Chapter 13 Plan; and

(f) For such other and further relief the Court deems just and proper.


Date: <u>September 19, 2024</u>

**Robertson, Anschutz, Schneid, Crane & Partners, PLLC**

<u>/s/ Willie B. Smith</u>
Willie Bruce Smith
Georgia Bar # 507412
13010 Morris Rd., Suite 450
Alpharetta, GA 30004
Telephone: 470-321-7112
Fax: 404-393-1425
Email: wismith@raslg.com

# EXHIBIT "A"

# NOTE

NOVEMBER 8, 2007
[Date]

1405 SPANN ROAD, WADLEY, GEORGIA 30477
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means AUGUSTA HOME LENDING GROUP

and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of SEVENTY-FOUR THOUSAND SIX HUNDRED FIFTY-SEVEN AND 00/100 Dollars (U.S.$ 74,657.00 ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of SEVEN AND 000/1000 percent ( 7.000 %) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

(A)  Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on JANUARY 1, 2008 . Any principal and interest remaining on the first day of DECEMBER 1, 2037 , will be due on that date, which is called the "Maturity Date."

(B)  Place

Payment shall be made at 3109 DEANS BRIDGE ROAD, AUGUSTA, GEORGIA 30906

or at such other place as Lender may designate in writing by notice to Borrower.

(C)  Amount

Each monthly payment of principal and interest will be in the amount of U.S.$ 496.69
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

(D)  Allonge to this Note for Payment Adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.  (Check applicable box.)

☐ Growing Equity Allonge          ☐ Graduated Payment Allonge

☐ Other [specify]

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

*H L F Jr.*

**6.   BORROWER'S FAILURE TO PAY**

**(A)   Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000                                        percent (        4.000 %) of the overdue amount of each payment.

**(B)   Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C)   Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

**7.   WAIVERS**

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

**8.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

**9.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 and 2 of this Note.

_Hurie L. Franklin_ _____ (Seal)                    _____ (Seal)
HURIE L. FRANKLIN                         -Borrower                                                -Borrower

_____ (Seal)                    _____ (Seal)
                                              -Borrower                                                -Borrower

_____ (Seal)                    _____ (Seal)
                                              -Borrower                                                -Borrower

**Pay to the order of** MORTGAGE SUPERSTORE, INC.          **Pay to the order of** _Taylor Bean and Whitaker Mortgage Corp_

**without recourse**                                        **without recourse**

**By:** __MIGUEL LACA – POWER OF ATTORNEY__                **By:** __MIGUEL LACA_____

**Signature:** _[signature]_                                **Signature:** _[signature]_

**Title:** __VICE PRESIDENT__                               **Title:** __VICE PRESIDENT__

**Company:** __AUGUSTA HOME LENDING GROUP__                 **Company:** __MORTGAGE SUPERSTORE, INC.__

Without recourse, pay to the order of

By: Taylor, Bean & Whitaker
Mortgage Corp.

______________________
Erla Carter-Shaw, E.V.P.

GA INTANGIBLE TAX PAID

**223**

JENNY W. GORDY
TAX COMMISSIONER
JEFFERSON COUNTY

After Recording Return To:

MORTGAGE SUPERSTORE, INC.
2425 E. COMMERCIAL BLVD., SUITE 402
FORT LAUDERDALE, FLORIDA 33308

GEORGIA JEFFERSON COUNTY
OFFICE OF CLERK OF SUPERIOR COURT

FILED FOR RECORD _____ 20 _____

AT _____ O'CLOCK _____ M

RECORDED _____ IN

BOOK _____ PAGE _____

_____ DEPUTY CLERK

GEORGIA JEFFERSON COUNTY
OFFICE OF CLERK OF SUPERIOR COURT

FILED FOR RECORD _____ 20 _____

AT _____ O'CLOCK _____ M

RECORDED _____ IN

BOOK _____ PAGE 223-237

_____ DEPUTY CLERK

———————— [Space Above This Line For Recording Data] ————————

# SECURITY DEED

THIS SECURITY DEED ("Security Instrument") is given on   NOVEMBER 8, 2007
The grantor is   HURIE L. FRANKLIN, A MARRIED MAN

("Borrower").  The Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
AUGUSTA HOME LENDING GROUP,

("Lender") is organized and existing
under the laws of   GEORGIA                                                                                   , and
has an address of   3109 DEANS BRIDGE ROAD, AUGUSTA, GEORGIA 30906

Borrower owes Lender the principal sum of   SEVENTY-FOUR THOUSAND SIX HUNDRED
FIFTY-SEVEN AND 00/100 —————— Dollars (U.S. $ 74,657.00       ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on   DECEMBER 1, 2037
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note.  For this purpose, Borrower does hereby grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS with power of sale, the following described property located in
JEFFERSON        County, Georgia:

H.L.F Jr.

FHA GEORGIA SECURITY DEED - MERS
(6/96)                                    Page 1 of 8                    DocMagic *eRanims* 800-649-1362
www.docmagic.com

THE PURPOSE OF RE-RECORDING THIS SECURITY DEED IS TO PERFECT TITLE.

## 153

which has the address of    1405 SPANN ROAD

                                     [Street]

       WADLEY               Georgia            30477            ("Property Address");

     [City]                                          [Zip Code]

    TO HAVE AND TO HOLD this property unto MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS.  Borrower and Lender covenant and agree as follows:

    1.  **Payment of Principal, Interest and Late Charge.**  Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

    2.  **Monthly Payment of Taxes, Insurance, and Other Charges.**  Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

    Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

*H L F. Jr*

FHA GEORGIA SECURITY DEED - MERS
(6/96)                          Page 2 of 8                       DocMagic eForms 800-649-1362
                                                                       www.docmagic.com

225

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3.   **Application of Payments.**  All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

THIRD, to interest due under the Note;

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

4.   **Fire, Flood and Other Hazard Insurance.**  Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5.   **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.**  Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless the Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a

*H L F Jr.*

FHA GEORGIA SECURITY DEED - MERS
(6/96)                                    Page 3 of 8                        DocMagic *eForms* 800-649-1362
                                                                            www.docmagic.com

226

leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j - 3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not

H L F J R.

FHA GEORGIA SECURITY DEED - MERS
(6/96)                                        Page 4 of 8                     DocMagic *eForms* 800-649-1362
                                                                             www.docmagic.com

paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 DAYS from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply

*H L F JR.*

228

to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances:  gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials.  As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

## NON-UNIFORM COVENANTS.  Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.**  Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property.  Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents.  However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower.  This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower.  However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender.  This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure.**  If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law.  Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale.  Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give copy of a notice of sale to Borrower in the manner provided in paragraph 13 and shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law.  Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines.  Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance.  The recitals in the lender's deed shall be prima facie evidence of the truth of the statements made therein.  Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.  The power and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by law.

If the Property is sold pursuant to this paragraph 18, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale.  If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

*H.L.F. JR*

DocMagic *eForms* 800-649-1362
www.docmagic.com

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

**20. Waivers.** Borrower waives all rights of homestead exemption in the property.

**21. Assumption not a Novation.** Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

**22. Security Deed.** This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

**23. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)].

| | | |
|---|---|---|
| ☐ Condominium Rider | ☐ Graduated Payment Rider | ☐ Growing Equity Rider |
| ☐ Planned Unit Development Rider | ☐ Adjustable Rate Rider | ☐ Rehabilitation Loan Rider |
| ☐ Non-Owner Occupancy Rider | ☒ Other [Specify] ACKNOWLEDGMENT WAIVER RIDER, MANUFACTURED HOME RIDER | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 8 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_Hurie L. Franklin Jr_____ (Seal)
HURIE L. FRANKLIN                      –Borrower

_____ (Seal)
                                       –Borrower

_____ (Seal)
                                       –Borrower

_____ (Seal)
                                       –Borrower

_____ (Seal)
                                       –Borrower

_____ (Seal)
                                       –Borrower

FHA GEORGIA SECURITY DEED - MERS
(6/96)                          Page 7 of 8              DocMagic eForms  800-649-1362
                                                         www.docmagic.com

230

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness

_____
Notary Public
State of Georgia

My commission expires:

090211



H L F Jr.

231

Date: NOVEMBER 8, 2007

Property Address: 1405 SPANN ROAD, WADLEY, GEORGIA 30477

## EXHIBIT "A"

## LEGAL DESCRIPTION

### Tract I

ALL that tract or parcel of land, with improvements thereon, situate, lying and being in the 83rd District G.M. of Jefferson County, Georgia, containing 1.135 acres, more or less, and being as appears on plat of survey by Jack D. Cooper, Surveyor, dated February 21, 1997 and recorded in Deed Book 238, Page 3, Jefferson County Records. Said property fronts to the North on Cooper Road and is bounded now or formerly as follows: On the North by Cooper Road; on the East by property of Tom Nelson; on the South by property of J.D. Tarver, Jr.; on the Northwest by property of Danny Young; and on the North by Cooper Road. Reference is made to said recorded plat for a fuller and more particular description.

### Tract II

ALL that tract or parcel of land, lying and being in the 83rd GMD, Jefferson County, Georgia, containing 0.661 acre, more or less, and being as appears on plat of survey by Jack D. Cooper, Surveyor, dated April 24, 1998, and recorded in Deed Book 245, page 580, Jefferson County Records. Said property fronts to the East on Spann Road a distance of 30 feet, more or less, and is bounded now or formerly as follows: On the South by property of J.D. Tarver, Jr.; on the West by property of J.D. Tarver, Jr.; on the North by property of Hurie Lee and Annie Mae Franklin by property of Tom Nelson, by property of Paul Gilmore, by property of Monroe Tarver, by property of Annie Doris Thompson, by property of Minnie Davis, and by property of Hosea Strowbridge; and on the East by Spann Road. Reference is made to said recorded plat for a fuller and more particular description.

H.L.F. Jr.

DocMagic *e*Forms 800-649-1362
www.docmagic.com

161

# ACKNOWLEDGMENT AND WAIVER
# OF BORROWER'S RIGHTS RIDER

THIS ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER is made this 8th day of NOVEMBER, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to AUGUSTA HOME LENDING GROUP

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:

1405 SPANN ROAD, WADLEY, GEORGIA 30477

[Property Address]

**In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree to the following:**

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS OF THE SECURITY DEED; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED IN THE SECURITY DEED; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THE SECURITY DEED AND THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID SECURITY DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THE SECURITY DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

162
233

READ AND AGREED BY GRANTOR:

Signed, sealed and delivered
In the presence of:

_____
                    **Unofficial Witness**

_____
                         **Notary Public**



H.L.F
xxxxxxxxxx
_____ (Seal)
HURIE L. FRANKLIN        -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____
HURIE L. FRANKLIN

**ACKNOWLEDGMENT AND WAIVER OF BORROWER'S RIGHTS RIDER**
**FOR USE WITH GA SECURITY INSTRUMENT**
10/31/05                    Page 2 of 3

DocMagic *eForms* 800-649-1362
                 www.docmagic.com

234

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Security Deed and "Acknowledgment and Waiver of the Borrower's Rights" by the Borrower(s), I or a representative of the firm reviewed with and explained to the Borrower(s) the terms and provisions of the Security Deed and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Acknowledgment and Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Security Deed and "Acknowledgment and Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn and subscribed before me this    8    day of    Nov    2007

_____
Notary Public

_____
Closing Attorney

MARY ANN HALL
NOTARY
EXPIRES
GEORGIA
AUG. 02, 2011
PUBLIC
McDUFFIE COUNTY

235

# MANUFACTURED HOME RIDER
## TO MORTGAGE, DEED OF TRUST
## OR OTHER SECURITY INSTRUMENT

THIS MANUFACTURED HOME RIDER is made this  8th  day of NOVEMBER, 2007
and is incorporated into and shall be deemed to amend and supplement that certain Mortgage, Deed of Trust
or Other Security Instrument (the "Security Instrument") of the same date hereof given by the undersigned
(the "Borrower(s)") to secure Borrower's Promissory Note (or Manufactured Home Retail Installment
Contract) to AUGUSTA  HOME  LENDING  GROUP
                                                                    (the "Note Holder")
of the same date hereof (the "Note"), and relating to the property described in the Security Instrument and
located at:

     1405 SPANN ROAD; WADLEY, GEORGIA 30477

The following provisions are applicable to the Security Instrument, including those marked and completed
(where applicable):

1. ☐  **DESCRIPTION OF REAL PROPERTY.**  The description of the real property set forth in the
Security Instrument is amended by the addition of the following:

"Together with all improvements constructed upon, affixed to or located upon the above described real
property, including without limitation any residential dwelling located upon or to be located thereon,
which dwelling is or may be a manufactured home, as hereinbelow described, which manufactured
home is or upon placement and affixation shall be conclusively deemed to be real estate (the
"Manufactured Home"):

Make:  General                    Model:

Year Built:  2007                 Length and Width:  52X28

☒  No Certificate of Title has been issued     ☐  Certificate of Title No.

2. ☒  **MANUFACTURED HOME AS PERSONAL PROPERTY SECURITY.**  The Note is also secured
by a security interest in favor of Note Holder in the following described manufactured home ("Manufactured
Home"), which is located on the real property described in the Security Instrument:

Make:                             Model:               Serial Number:

Year Built:                       Length and Width:

☒  No Certificate of Title has been issued     ☐  Certificate of Title No.

HLF Jr.

MANUFACTURED HOME RIDER TO MORTGAGE, DEED OF TRUST
OR OTHER SECURITY INSTRUMENT
07/28/06                                    Page 1 of 3

DocMagic *€Forms* 800-649-1362
www.docmagic.com

## 236

**3. ADDITIONAL COVENANTS OF BORROWER(S) RELATING TO MANUFACTURED HOME.** If Paragraph 1 has been marked and completed, Borrower(s) agree(s) to comply with all State and local laws and regulations relating to the affixation of the Manufactured Home to the real property described herein including, but not limited to, surrendering the Certificate of Title (if required), obtaining any governmental approval and executing any documentation necessary to classify the Manufactured Home as real property under State and local law.

The Manufactured Home shall be at all times and for all purposes permanently affixed to and part of the real property described herein and shall not be removed from said real property. Borrower(s) covenant(s) that affixing the Manufactured Home to the real property described herein does not violate any zoning laws or other local requirements applicable to manufactured homes.

If Paragraph 2 has been marked and completed, Borrower(s) agree(s) and covenant(s) that the Manufactured Home is and shall remain personal property, severable and separate from the real property described in the Security Instrument, and agree(s) and covenant(s) not to take any action, or fail to take any action, which would result in a change in such status.

**4. SECURITY AGREEMENT AND FINANCING STATEMENT.** This Security Instrument shall be a security agreement granting Lender a first and prior security interest in all of Borrower's right, title and interest in, to and under any personal property ("Personal Property") which under and within the meaning of the applicable State laws is and cannot be classified and considered real property, if any. Personal Property shall also include the Manufactured Home described in Paragraph 2 hereof, if applicable. In the event of any foreclosure sale, whether made by Trustee or a substitute trustee, or under judgment of the court or pursuant to a power of sale, all of the Property and Personal Property may, at the option of Lender, be sold as a whole or any part thereof. It shall not be necessary to have present at the place of such sale the Personal Property or any part thereof. Lender, as well as Trustee or any substitute trustee on Lender's behalf, shall have all the rights, remedies and recourses with respect to the Personal Property afforded to a "Secured Party" by the applicable state laws in addition to and not in limitation of the other rights and recourse afforded Lender and/or Trustee or any substitute trustee under this Security Instrument. Borrower(s) shall, upon demand, pay to Lender the amount of any and all expenses, including the fees and disbursements of Lender's legal counsel and of any experts and agents which Lender may incur in connection with: (i) the making and/or administration of this Security Instrument; (ii) the custody, preservation, use or operation of, or the sale or collection from, or other realization upon any property, real and/or personal, described in this Security Instrument; (iii) the exercise or enforcement of any of the rights of Lender under this Security Instrument; or (iv) the failure by Borrower(s) to perform or observe any of the provisions or covenants in this Security Instrument.

Lender may, at its election, at any time after the delivery of this Security Instrument, sign one or more copies of this Security Instrument in order that such copies may be used as a financing statement under the applicable State laws. Lender's signature need not be acknowledged, and is not necessary to the effectiveness hereof as a deed of trust, a security agreement, or (unless otherwise required by applicable law) a financing statement.

**5. RESPONSIBILITY FOR IMPROVEMENTS.** Lender shall not be responsible for any improvements made or to be made, or for their completion relating to the real property, and shall not in any way be considered a guarantor of performance by any person or party providing or effecting such improvements.

*H L F Jr*

MANUFACTURED HOME RIDER TO MORTGAGE, DEED OF TRUST
OR OTHER SECURITY INSTRUMENT
07/28/06                                        Page 2 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

166

237

**6. INVALID PROVISIONS.** If any provision of this Security Instrument is declared invalid, illegal or unenforceable by a court of competent jurisdiction, then such invalid, illegal or unenforceable provisions shall be severed from this Security Instrument and the remainder enforced as if such invalid, illegal or unenforceable provision is not a part of this Security Instrument.

Executed this     8     day of     Nov   2007

_____ (Seal)                    _____ (Seal)
HURIE L. FRANKLIN            -Borrower                                              -Borrower


_____ (Seal)                    _____ (Seal)
                            -Borrower                                              -Borrower


_____ (Seal)                    _____ (Seal)
                            -Borrower                                              -Borrower

**After Recording Return To:**
**SERVICELINK**
**ATTN: LOAN MODIFICATION**
**SOLUTIONS**
**3220 EL CAMINO REAL**
**IRVINE, CA 92602**

eFiled & eRecorded
DATE: 6/18/2020
TIME: 1:57 PM
DEED BOOK: 00600
PAGE: 00528 - 00537
RECORDING FEES: $25.00
INTANGIBLE TAX: $22.50

CLERK: Anne Durden
Jefferson County, GA
Cross-References: 2
NOTE: DEED BK 432 PG. 223 & DEED BK 434 PG. 152

————————————————[Space Above This Line For Recording Data]————————————————
**Original Principal Amount $74,657.00**
**Unpaid Principal Amount $56,405.11**
**New Principal Amount $63,843.95**
**Total Cap Amount $7,438.84**

# HOME AFFORDABLE MODIFICATION AGREEMENT

Dated: **May 12, 2020**
Borrower ("I")[1] : **HURIE L. FRANKLIN , A MARRIED MAN**
Lender or Servicer ("Lender"): **SELENE FINANCE LP**

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **11/08/2007**

Property Address *[and Legal Description if recordation is necessary]* ("Property"): **1405 SPANN ROAD, WADLEY, GA 30477**
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF:**

Original security instrument in the amount of **$74,657.00** and recorded on **12/05/2007** in Book, Volume, or Liber No. **432**, at Page **223** (or as Instrument No. **N/A**) and re-recorded on **January 11, 2008** in **BOOK434 PAGE 152** , in the Office of the County Clerk or Register of **JEFFERSON** County, State of Georgia.

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents."

---
[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Georgia Home Affordable Modification Agreement – Non-GSE –  (page 1 of 9 pages)

eFiled & eRecorded
Case: 23-11003-SDB   Doc#:57   Filed:09/19/24   Entered:09/19/24 08:52:45   Page:25 of 34
DATE: 6/18/2020
TIME: 1:57 PM
DEED BOOK: 00600
PAGE: 00529

Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.  **My Representations and Covenants**. I certify, represent to Lender, covenant and agree:

    A.  I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.  One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C.  There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D.  I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

    E.  Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

    F.  If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

    G.  I have made or will make all payments required under a trial period.

2.  **Acknowledgements and Preconditions to Modification**. I understand and acknowledge that:

    A.  If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

    B.  I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.  **The Modification**. If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **06/01/2020** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if

Georgia Home Affordable Modification Agreement – Non-GSE –                              (page 2 of 9 pages)

eFiled & eRecorded
DATE: 6/18/2020
TIME: 1:57 PM
DEED BOOK: 00600
PAGE: 00530

Case:23-11063-SDB    Doc#:57    Filed:09/19/24    Entered:09/19/24 08:52:45    Page:26 of 34

I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **07/01/2020**.

A.    The Maturity Date will be: **06/01/2050**.

B.    The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan.The new principal balance of my Note will be **$63,843.95** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.    Interest at the rate of **4.000%** will begin to accrue on the New Principal Balance as of **06/01/2020** and the first new monthly payment on the New Principal Balance will be due on **07/01/2020**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1 - 30 | 4.000% | 06/01/2020 | $304.80 | $174.97, may adjust periodically | $479.77, may adjust periodically | 07/01/2020 | 360 |

\*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D.    I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

**Georgia Home Affordable Modification Agreement – Non-GSE –**                                    *(page 3 of 9 pages)*

eFiled & eRecorded
DATE: 6/18/2020
TIME: 1:57 PM
DEED BOOK: 00600
PAGE: 00531

Case:23-11063-SDB   Doc#:57   Filed:09/19/24   Entered:09/19/24 08:52:45   Page:27 of 34

      **E.**     If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

**4.**    **Additional Agreements**. I agree to the following:

      **A.**     That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents);  or (iii) the Lender has waived this requirement in writing.

      **B.**     That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

      **C.**     To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

      **D.**     That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

      **E.**     That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

      **F.**     That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

      **G.**     That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage.  Lender shall not exercise this option if federal law prohibits the exercise of such option as of the date of such sale or transfer.  If Lender exercises this option, Lender shall give me notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the

---

**Georgia Home Affordable Modification Agreement – Non-GSE –**

eFiled & eRecorded
DATE: 6/18/2020
TIME: 1:57 PM
DEED BOOK: 00600
PAGE: 00532

Case 3:23-11003-SDB   Doc#:57   Filed:09/19/24   Entered:09/19/24 08:52:45   Page:28 of 34

notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H.     That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I.     That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J.     That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.     That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L.     Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.     That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment

---

**Georgia Home Affordable Modification Agreement – Non-GSE –**                          *(page 5 of 9 pages)*

eFiled & eRecorded
DATE: 6/18/2020
TIME: 1:57 PM
DEED BOOK: 00600
PAGE: 00533

history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N.  That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O.  That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

In Witness Whereof, the Lender and I have executed this Agreement.

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Home Affordable Modification Agreement and in any Rider executed by Borrower and recorded with it.

_____ (Seal)       _____ (Seal)
HURIE L. FRANKLIN               -Borrower                                      -Borrower

Mailing Address: **1405 SPANN RD, WADLEY, GA**      Mailing Address:
**30477**

_____ (Seal)       _____ (Seal)
                                -Borrower                                      -Borrower

Mailing Address:                            Mailing Address:

Georgia Home Affordable Modification Agreement – Non-GSE –                      *(page 6 of 9 pages)*

eFiled & eRecorded
DATE: 6/18/2020
TIME: 1:57 PM
DEED BOOK: 00600
PAGE: 00534

Case 23-11003-SDB   Doc#:57   Filed:09/19/24   Entered:09/19/24 08:52:45   Page:30 of 34

**ACKNOWLEDGMENT**

State of Georgia                              §
                                             §
County of **Washington**                     §

    This record was acknowledged before me on _____**June 2, 2020**_____ by **HURIE L. FRANKLIN** who proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

   **X**    **Personally Known**
         or
_____ **Produced Identification**

Type and # of ID (last 4
digits)                    _____

ID Expiration Date         _____

_____ June 2, 2020
Unofficial Witness                    Date

**Louvenia Gibson**
Printed, Typewritten, or Stamped Name

                            _____
                            Signature of Notary Public

                            **Rose Anna Danzy**
                            (Name of Notary, Typed, Stamped or Printed)
                            Notary Public State of Georgia

(Stamp/Seal)

                            My Commission Expires: **9/27/2020**


ROSE ANNA DANZY
NOTARY
EXPIRES
GEORGIA
SEPT. 27, 2020
PUBLIC
WASHINGTON COUNTY

Georgia Home Affordable Modification Agreement – Non-GSE –

eFiled & eRecorded
Case:23-11003-SDB   Doc#:57   Filed:09/19/24   Entered:09/19/24 08:52:45   Page:31 of 34
DATE: 6/18/2020
TIME: 1:57 PM
DEED BOOK: 00600
PAGE: 00535

ACCEPTED AND AGREED TO BY THE OWNER AND HOLDER OF SAID NOTE
**SELENE FINANCE LP**

By: _____
Tonya Higginbotham   Assistant Vice President Lender

Date of Lender's Signature: 6/16/2020

_____   6/16/2020
Witness Signature                          (Date)

Printed Name _____ Genevieve A. Jacobs

**ACKNOWLEDGMENT**

State of ____ Florida

County of ____ Duval

The foregoing instrument was acknowledged before me by means of ☒ physical presence or ☐ online notarization, this 16th of June 2020 ____ by Tonya Higginbotham Assistant Vice President ____ of SELENE FINANCE LP, a DELAWARE limited partnership, on behalf of the limited partnership. He/She is personally known to me or who has produced _____ N/A ____ as identification.

_____
Signature of Person Taking Acknowledgment

**Willette Ricks**
Name Typed, Printed or Stamped
Notary
_____
Title or Rank

Serial Number, if any: GG085992

My Commission Expires: 3/22/2021

(Seal)

WILLETTE RICKS
Notary Public – State of Florida
Commission # GG 085992
My Comm. Expires Mar 22, 2021
Bonded through National Notary Assn

Georgia Home Affordable Modification Agreement – Non-GSE –                    (page 8 of 9 pages)

**EXHIBIT A**

**BORROWER(S): HURIE L. FRANKLIN , A MARRIED MAN**

**LEGAL DESCRIPTION:**

**STATE OF GEORGIA, COUNTY OF JEFFERSON, AND DESCRIBED AS FOLLOWS:**

TRACT I  ALL THAT TRACT OR PARCEL OF LAND, WITH IMPROVEMENTS THEREON, SITUATE, LYING AND BEING IN THE 83" DISTRICT G.M. OF JEFFERSON COUNTY, GEORGIA, CONTAINING 1.135 ACRES, MORE OR LESS, AND BEING AS APPEARS ON PLAT OF SURVEY BY JACK D. COOPER, SURVEYOR, DATED FEBRUARY 21, 1997 AND RECORDED IN DEED BOOK 238, PAGE 3, JEFFERSON COUNTY RECORDS. SAID PROPERTY FRONTS TO THE NORTH ON COOPER ROAD AND IS BOUNDED NOW OR FORMERLY AS FOLLOWS: ON THE NORTH BY COOPER ROAD; ON THE EAST BY PROPERTY OF TOM NELSON; ON THE SOUTH BY PROPERTY OF J.D. TARVER, JR.; ON THE NORTHWEST BY PROPERTY OF DANNY YOUNG; AND ON THE NORTH BY COOPER ROAD. REFERENCE IS MADE TO SAID RECORDED PLAT FOR A FULLER AND MORE PARTICULAR DESCRIPTION.  TRACT II  ALL THAT TRACT OR PARCEL OF LAND, LYING AND BEING IN THE 83' GMD, JEFFERSON COUNTY, GEORGIA, CONTAINING 0.661 ACRE, MORE OR LESS, AND BEING AS APPEARS ON PLAT OF SURVEY BY JACK D. COOPER, SURVEYOR, DATED APRIL 24, 1998, AND RECORDED IN DEED BOOK 245, PAGE 580, JEFFERSON COUNTY RECORDS. SAID PROPERTY FRONTS TO THE EAST ON SPANN ROAD A DISTANCE OF 30 FEET, MORE OR LESS, AND IS BOUNDED NOW OR FORMERLY AS FOLLOWS: ON THE SOUTH BY PROPERTY OF J.D. TARVER, JR.; ON THE WEST BY PROPERTY OF J.D. TARVER, JR.; ON THE NORTH BY PROPERTY OF HURIE LEE AND ANNIE MAE FRANKLIN BY PROPERTY OF TOM NELSON, BY PROPERTY OF PAUL GILMORE, BY PROPERTY OF MONROE TARVER, BY PROPERTY OF ANNIE DORIS THOMPSON, BY PROPERTY OF MINNIE DAVIS, AND BY PROPERTY OF HOSEA STROWBRIDGE; AND ON THE EAST BY SPANN ROAD. REFERENCE IS MADE TO SAID RECORDED PLAT FOR A FULLER AND MORE PARTICULAR DESCRIPTION.

ALSO KNOWN AS: 1405 SPANN ROAD, WADLEY, GA 30477

Georgia Home Affordable Modification Agreement – Non-GSE –                                    *(page 9 of 9 pages)*

eFiled & eRecorded
Case 23-11003-SDB   Doc#:57   Filed:09/19/24   Entered:09/19/24 08:52:45   Page:33 of 34
DATE: 6/18/2020
TIME: 1:57 PM
DEED BOOK: 00600
PAGE: 00537

███████████
Borrowers ("Borrower"): **HURIE L. FRANKLIN , A MARRIED MAN**

# LOAN MODIFICATION AGREEMENT RIDER

THIS LOAN MODIFICATION AGREEMENT RIDER is made this **12th** day of, **May, 2020**, by and between the undersigned borrower (the "Borrower") and **SELENE FINANCE LP**, (the "Lender") and is incorporated into and shall be deemed to amend and supplement that certain LOAN MODIFICATION AGREEMENT (the "Agreement") of the same date executed by the Borrower and Lender as of the date above.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Agreement, Borrower and Lender further covenant and agree as follows:

1.   **Escrow Items**

Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligation to pay to Lender Funds for any or all Escrow Items is hereby revoked. Borrower is hereby advised that beginning on the monthly payment due date set forth above, the amount of Escrow Items will be included with Borrower's monthly payment of principal and interest.

2.   **Interest Accrual Change.**

Depending on the terms of your original note, interest may have accrued on a daily basis. According to the terms of your loan modification, interest will now accrue on an amortizing basis.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and conditions contained in this LOAN MODIFICATION AGREEMENT RIDER.

_Hurie L. Franklin_ (Seal)                          _____ (Seal)
**HURIE L. FRANKLIN**           -Borrower                                      -Borrower

_____ (Seal)                  _____ (Seal)
                          -Borrower                                      -Borrower

**Loan Modification Agreement Rider**
███                          Page 1 of 1                          ███████████
                                                        ███████████████

██████████████████████████████████████████████████████████████████████

# Jefferson County, GA

## Summary

| | |
|---|---|
| Parcel Number | ▮▮▮ |
| Location Address | 1405 SPANN RD |
| Legal Description | S/SD OF Spann Rd |
| | (Note: Not to be used on legal documents) |
| Class | R3-Residential |
| | (Note: This is for tax purposes only. Not to be used for zoning.) |
| Zoning | RA |
| Tax District | County (District 07) |
| Millage Rate | 30.175 |
| Acres | 1.8 |
| Neighborhood | N/A |
| Homestead Exemption | No (S0) |
| Landlot/District | N/A |

View Map

## Owner

FRANKLIN HURIE L & ANNIE
106 WASHINGTON TRAIL
TENNILLE, GA 31089-4156

## Rural Land

| Type | Description | Calculation Method | Soil Productivity | Acres |
|---|---|---|---|---|
| RUR | Small Parcels | Rural | 1 | 1.8 |

## Mobile Homes

| Style | Manufacturer | Model | Year Built | Width Length | Serial Number | Condition | Value |
|---|---|---|---|---|---|---|---|
| Mobile Homes | GENERAL MFG HMS INC | SLE | 2007 | 28 x 48 | ▮▮▮ | Average | $26,052 |

## Accessory Information

| Description | Year Built | Dimensions/Units | Identical Units | Value |
|---|---|---|---|---|
| Homesite - 9904 ($1750) | 2007 | 0x0 / 1 | 1 | $0 |
| Land Fill | 2007 | 0x0 / 1 | 1 | $0 |
| Storage Bldg-Frame | 1984 | 8x12 / 0 | 1 | $204 |
| Shed-Frame | 1979 | 18x24 / 0 | 1 | $1,037 |

## Sales

| Sale Date | Deed Book / Page | Plat Book / Page | Sale Price | Reason | Grantor | Grantee | Adjustment | Total Sale Price |
|---|---|---|---|---|---|---|---|---|
| 1/14/2008 | 0434 0151 | 0245 0580 | $0 | 4E UI Relatives or Affiliates | FRANKLIN HURIE L | FRANKLIN HURIE L | $0 | $0 |
| 1/14/2008 | 0434 0150 | 0245 0580 | $0 | 4E UI Relatives or Affiliates | FRANKLIN HURIE L | FRANKLIN HURIE L | $0 | $0 |
| 11/8/2007 | 0432 0221 | 0238 0003 | $75,829 | 4Z QI Other - improved | B & A MOBILE HOMES INC DBA AMERICAN | FRANKLIN HURIE L | $0 | $75,829 |
| 9/28/2007 | 0431 0178 | 0245 580 | $0 | 3G QV Convenience | FRANKLIN SR HURIE LEE | B & A MOBILE HOMES INC | $0 | $0 |
| 6/11/1997 | 0238 0004 | 0238 0003 | $1,500 | LM QV Fair Market - Land Only | TARVER JR J D | FRANKLIN SR HURIE LEE & ANNIE MAE | $0 | $1,500 |

## Valuation

| | 2024 | 2023 | 2022 | 2021 |
|---|---|---|---|---|
| Previous Value | $43,342 | $42,067 | $37,463 | $36,094 |
| Land Value | $9,670 | $14,541 | $14,541 | $12,118 |
| + Improvement Value | $26,052 | $26,405 | $25,130 | $22,949 |
| + Accessory Value | $1,241 | $2,396 | $2,396 | $2,396 |
| = Current Value | $36,963 | $43,342 | $42,067 | $37,463 |

## Sketches